In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-093 CR


____________________



DANIEL WAYNE BOONE, SR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 159th District Court


Angelina County, Texas


Trial Cause No. CR-22011






OPINION


 A two count indictment charged Daniel Wayne Boone, Sr., with burglary of a
habitation and aggravated assault. The indictment alleged the use or exhibition of a deadly
weapon on both counts. After a bench trial, the trial court convicted Boone on both
counts, sentenced Boone to ten years of confinement in the Texas Department of Criminal
Justice, Institutional Division, and entered affirmative findings of the use or exhibition of
a deadly weapon. The three points of error raised on appeal challenge the legal and factual
sufficiency of the evidence to support the deadly weapon findings. 

 In reviewing the legal sufficiency of the evidence to support a criminal conviction,
we review the evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979). When conducting a review of the factual sufficiency of the
evidence, we consider all of the evidence neutrally. The evidence is factually insufficient
if the evidence favorable to the verdict is so weak as to make a finding clearly wrong and
manifestly unjust, or the finding is against the great weight and preponderance of the
available evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A
conclusion that the appellant's conviction is manifestly unjust must flow, not from the
existence of some contrary evidence, but from the great weight and preponderance of any
contrary evidence. Goodman v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001).

 The issue in this appeal concerns only the evidence of use or exhibition of a deadly
weapon in the commission of the offenses. The complainant, T.G., a twenty-one year old
married female, testified that she awoke on the morning of the offense to repeated urgent
ringing of the doorbell to her home. She was not appropriately attired. T.G. opened the
door two or three inches and asked Boone what he wanted. Boone pushed the door open
with his hand and stepped inside. Boone asked for the former owner of the home. When
T.G. informed him that person was not a resident, T.G. testified that Boone "tossed his
hand up in my face and said, well, you're going to doctor this." T.G. noticed a bleeding
wound on Boone's left hand. She testified, "when he had tossed his hand up, for a split
second I saw the end of a gun." T.G. only saw the end of the barrel of the gun, peeking
out of the bottom of Boone's buttoned vest at the top of his pants. The gun made her feel
scared, so she decided that she was going to do whatever it took to get him out of the
house. T.G. walked to the back of the house to look for peroxide, donning her robe in the
process. She heard Boone say "these are really pretty sheets," and found him sitting on
her bed, rubbing her satin sheets. Boone asked T.G. how old she was, where her husband
was, and when she was expecting him back. She went back into the bathroom and reached
for the peroxide. Boone embraced her from behind, pulled her to him, and kissed her
neck. She could feel the gun. T.G. testified that she was positive she was going to be
hurt. She tried to push Boone away from her. At that point, her two-year-old daughter
entered the room. T.G. testified that she thought that Boone "was just going to shoot my
daughter." Boone became nervous, and the toddler asked him what he was doing there. 
Boone said that he was a friend and she was doctoring his bo-bo. The girl said, "Your
shoe is untied," and T.G. noticed a white shoelace "slide down his arm, almost to his
elbow." Boone said, "That's not my shoe, that's my gun." T.G. grabbed Boone's hand,
poured peroxide on it, and he walked out. The defendant told her that she should not be
home alone by herself, that he would be back to check on her, and that his name was
Daniel Boone. He eventually left the house and was apprehended at another house not
long after. When the police arrested Boone, he was armed only with a few pocket knives. 
The police did not search the house where they arrested Boone. Boone's mother testified
that she pawned Boone's guns years ago, and the guns were redeemed by a family member
who kept them. Boone's mother testified that Boone drove her car that day to go to the
house where Boone's son had been out late the night before. She does not keep a gun in
the car. 

 The appellant challenges the sufficiency of the evidence of use or exhibition of a
deadly weapon as the aggravating element of the assault and as affirmative findings for
purposes of determining parole eligibility for both offenses. See Tex. Pen. Code Ann.
§ 22.02(a)(2) (Vernon 1994); Tex. Gov't Code Ann. § 508.145 (Vernon Supp. 2003). 
Within the meaning of Article 42.12 § 3g (a)(2) of the Texas Code of Criminal Procedure,
"use" includes not only wielding but also any employment of a deadly weapon, even its
simple possession, if such possession facilitates the associated felony, while "exhibit"
means that the deadly weapon is consciously displayed during the commission of the
associated felony. Patterson v. State, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). The
State is not required to prove intent to use an instrument as a deadly weapon in order to
obtain an affirmative finding. Walker v. State, 897 S.W.2d 812, 814 (Tex. Crim. App.
1995). 

 The appellant concedes that mere presence of a weapon may be sufficient to instill
fear and threaten a person with bodily injury. Boone seeks to distinguish De Leon v. State,
865 S.W.2d 139, 142 (Tex. App.--Corpus Christi 1993, no pet.), and Gaston v. State, 672
S.W.2d 819, 821-22 (Tex. App.--Dallas 1983, no pet.), because those assault-by-threat
cases involve situations where the victim saw the weapon in close proximity. His attempt
to distinguish De Leon and Gaston on that basis fails because T.G. both saw the gun in
close proximity and felt it against her body. Here, the State alleged offensive physical
contact as the means of assault, not threat. When the evidence is viewed in the light most
favorable to the verdict, Boone gestured to T.G. in a manner that let her see that he was
armed, then engaged in the offensive physical contact in such a manner that the
complainant came into contact with the weapon, then mentioned that he had a gun. 
Although he never openly threatened T.G. with it, Boone so intimidated her with the
knowledge that he possessed the weapon that Boone, in her words, was able to, "grab[]
me, and in a way that only my husband should be allowed to grab me." T.G. both saw
and felt the firearm, and her knowledge that Boone possessed the weapon caused her to
submit to the physical contact with the appellant. The evidence supports the inference that
Boone consciously displayed the firearm, as opposed to inadvertently revealing it, when
he entered the house and demanded assistance, when he pressed against T.G., and when
he talked to the toddler. The same evidence supports a finding that Boone employed the
weapon in order to affect the offensive touching. 

 There is evidence supporting an inference that Boone did not carry a weapon on his
person at all. His mother testified that Boone no longer owns a firearm and Boone was not
carrying a firearm at the time of his arrest. Boone's mother did contradict herself several
times in the course of cross-examination, however, and Boone had the opportunity to
discard his weapon before surrendering. It is also possible that Boone did have a weapon
in his possession but that he meant to conceal it from the victim and that he was unaware
that the victim had noticed it and been frightened into submitting to physical contact
because he was armed. That possibility is unlikely considering he mentioned it to the
victim's daughter. We hold that the evidence is both legally and factually sufficient to
support a conviction for assault aggravated by the use or exhibition of a deadly weapon,
and that the trial court's affirmative finding of the use of a deadly weapon is supported by
the record. 

 The trial court also entered an affirmative finding of the use or exhibition of a
deadly weapon in the commission of the burglary of a habitation. We have already
discussed the evidence supporting Boone's conviction for committing an assault with a
deadly weapon while inside the habitation that he burglarized. A deadly weapon finding
is authorized if the defendant uses or exhibits a firearm during the commission of the
offense or during immediate flight therefrom. Tex. Code Crim. Proc. Ann. art. 42.12
§ 3g (a)(2) (Vernon Supp. 2003). In this case, Boone displayed the firearm immediately
upon entering the house, and remained in the house because its occupant was afraid that
he would use it. Thus, the use or exhibition of the deadly weapon facilitated the burglary
as well as the assault. Issues one through three are overruled. The conviction is affirmed.

 AFFIRMED.

 

 PER CURIAM


Submitted on January 2, 2003

Opinion Delivered January 29, 2003

Do Not Publish 


Before McKeithen, C.J., Burgess and Gaultney, JJ.